**Pennsylvania Funeral Directors Association v. Cremation Society of Pennsylvania Inc.**

C.P. of Dauphin County, no. 2004 EQ 0040.

*Loudon L. Campbell* and *Derek D. Bahl,* for plaintiffs.
*Kathleen K. Ryan* and *Jordan D. Cunningham,* for defendants.

KLEINFELTER, *J.,* November 17, 2005—This case presently comes before the court on preliminary objections filed by plaintiff, Pennsylvania Funeral Directors Association (PFDA) to defendants, Cremation Society

of Pennsylvania, Veterans Cremation Society Inc., and Dale Auer's (defendants) first amended counterclaim.

The underlying complaint[1] in equity seeks a permanent injunction which would prohibit defendants from "engaging in funeral directing" and, more particularly: "the care and/or disposition of the human dead, making transportation arrangements for the removal and transfer of the deceased, cremation, preparation of the documents such as the death certificate, notification to Social Security and the Veterans Administration, approval from the coroner for cremation, assistance in placing the obituary, assistance to or in the planning of a memorial service or arranging a private family identification time, performing cremation services for the consuming public and from reaping or retaining any profit from the performance of cremation services."

The complaint also asks the court to direct defendants to notify its customers of the entry of any injunction and to direct defendants to return to its customers 100 percent of any monies paid for services.

Defendants' counterclaim[2] contains two counts: libel (Count I) and tortious interference with contractual and business relations and opportunities (Count II).

## COUNTERCLAIM FOR LIBEL

The counterclaim for libel avers: (1) that allegations of illegal conduct made by PFDA in their complaint are knowingly false; (2) that the allegations were published

---

1. References are to PFDA's second amended complaint.
2. References are to defendants' first amended counterclaim.

in a press release which was forwarded to newspapers; and (3) that defendants' reputation has been harmed thereby.

The preliminary objections by PFDA to this count take various forms. In paragraph 24, PFDA states that the counterclaim fails to state a claim or to aver facts in support of a claim for libel. This we treat as a demurrer. Paragraph 25 states that the claim of libel should be dismissed as a matter of law—but fails to suggest why. We will presume the legal basis is found in paragraph 26 which avers that a claim of libel is barred by "judicial privilege as the complaint is a pleading submitted to the court." Paragraph 27 states that the averments in the complaint were "true, privileged or of public concern." This "objection," however, is in the nature of an affirmative defense and is not properly raised as a preliminary objection. Lastly, in paragraph 28, PFDA claims lack of specificity in pleading the libel counterclaim.

In support of their privilege objection, PFDA cites *Bochetto v. Gibson,* 580 Pa. 245, 860 A.2d 67 (2004), where the issue concerned the liability of an attorney for faxing a previously filed complaint to a reporter. Our Supreme Court ruled that the filing of the complaint was covered by the judicial privilege and a party is entitled to absolute immunity "for communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought." *Id.,* 580 Pa. at 251, 860 A.2d at 71. (citation omitted)

On the other hand, where a statement initially made in the regular course of judicial proceedings is later republished to another audience outside of those proceedings, such may be considered an extra-judicial act and may

not be protected by the privilege. *Id.,* 560 Pa. at 252, 860 A.2d at 72.

In the case at bar, what PFDA alleged in their complaint is clearly protected by the judicial privilege. On the other hand, when PFDA forwarded its allegations via press releases to its membership and to newspapers of general circulation, it arguably acted outside "the regular course of judicial proceedings." For this reason, whether PFDA's objection is viewed as a demurrer or motion to strike, it must fail at this juncture of the proceedings. We also believe this count must survive any challenge to the specificity of the pleadings.

## COUNTERCLAIMS FOR TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTUAL AND BUSINESS RELATIONS AND OPPORTUNITIES

PFDA's first objection to this counterclaim is in the nature of a demurrer. The Restatement would impose liability for pecuniary loss on "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing . . . [them] not to perform the contact." Restatement (Second) Torts §766. The absence of privilege or justification is a factor in judging the propriety of defendants' conduct. *Cloverleaf Development v. Horizon Financial,* 347 Pa. Super. 75, 500 A.2d 163 (1985). Other factors to be considered are:

"(a) The nature of the actor's conduct;

"(b) The actor's motive;

"(c) The interests of the other with which the actor's conduct interferes;

"(d) The interests sought to be advanced by the actor;

"(e) The social interest in protecting the freedom of action of the actor and the contractual interests of the other;

"(f) The proximity or remoteness of the actor's conduct to the interference; and

"(g) The relations between the parties." *Small v. Juniata College,* 452 Pa. Super. 410, 418, 682 A.2d 350, 354 (1996) (quoting Restatement (Second) of Torts §767).

PFDA's argument in support of its objection is that the filing of its complaint and circulation of a press release was "proper" and that it was "privileged and justified." This response, however, begs the question posed by a demurrer. Such defenses to the allegations should be raised by answer, and/or through a pleading of new matter. Accordingly, PFDA's objection in the nature of a demurrer must be denied.

PFDA also challenges the interference with contract counts as lacking specificity. While we agree with PFDA that defendants have failed to identify by name those members who have cancelled their memberships and/or cremation agreements and have failed to specify the dollar amount of any financial loss, we believe that these questions can be ascertained through discovery. Moreover, as regards "prospective business relations," such are incapable of being specifically identified at this juncture.

Finally, PFDA objects to any claim by defendants for punitive damages. Our review of the counterclaim reveals only one reference to punitive damages and that is in paragraph 96 (Count II) and in the ad damnum clause for Count II. Despite this scant reference to punitive dam-

336

ages and despite the lack of any specific allegation of egregious or outrageous conduct, we decline to strike this claim at this juncture. As this court has noted many times, a claim for punitive damages does not constitute a separate cause of action and challenges to such a claim should be deferred to such time as would be appropriate for summary judgment. See *e.g., Wheeler v. Beverly Enterprises,* 121 Dauph. Rep. 285 (2002).

We enter the following:

## ORDER

And now, November 17, 2005, it is hereby ordered that the preliminary objections of Pennsylvania Funeral Directors Association to new matter and first amended counterclaim are denied.